**7954**

POER & SEIXAS.       :       NO: 7954.

~VS~                  :       Court of Appeal.

CATHERINE ZAGAMINE.   :       PARISH OF ORLEANS.

Dinkelspiel. J.

7954

345

Dinkelspiel. J.

This litigation arises out of the following facts;
plaintiff, a real estate ordinary co-partnership,
allege, that defendant is indebted to them in the
full sum of $575.00, with interest and Attorneys
fees, for this, to-wit;-

That on June 19th. 1917, they entered into a writ-
ten contract with defendant, whereby she engaged their
services, as real estate agents, for the sale of a
certain tract of land, described in the petition, and
that for the services they were to receive the sum
of three per cent commission, and that they had an
exclusive agency for the sale for a period of one
year from the date of the agreement.

That on May, 18th. 1918, the defendant sold the
property in question for the sum of $19.000.

That in addition to the fee of three per cent, for
the services rendered, they were also entitled to 20%
Attorneys fees in the event of the non-payment of said
commission. That there claim was placed in the hands
of an Attorney for collection, therefore, they claim
judgment for Attorneys fees in the sum of $114.00,
and for commission on the sale of the property in the
sum of $570.00., making a total sum due plaintiff of
$684.00.

Alloging amicable demand in vain they prayed for
judgment accordingly.

Annexed to, and made part of the petition is a
contract signed by defendant with her mark, and par-
-ticular attention is called to said contract in
the provisions printed and partly erased, to-wit;-

" You are authorized to accept a deposit of not
less than 10% of contract price to bind the sale
and deposit same to your account until sale is

346

consumated and in case sale cannot be completed, you
are authorized to return said deposit".

Again;- " I agreed to give you the same and exclus-
ive agency for the term ofsix six- 12 months from
date h.reof, to offer and sell said property".

" My failure to notify you in writing during the term
of this contract to discontinue same, shall operate as
a renewal thereof, and extend said contract to an
additional six- 12 months on the same terms and con-
ditions."

Defendant, in her answer, admits that she entered
into the contract referred to, but the term of said
employment was for six months from the date thereof.

Further admits, plaintiffs employment, and as now
appears from said contract annexed, for the term of
12 months, but avers, that at the time, the contract
was made and consented to it was for a term of six
months, and as she at the time understood was so written
in the said contract; that she signed her X mark with
the full understanding and beleif that the term of
plaintiffs employment, as written in the document, was
limited to six months, and it now appears that the word
six written in the contract had been blurred up, thereby
leaving the twelve as printed standing as the term of
the contract.

That is if the contract was at the time as now stated
in the petition, she made her mark to it in error, and
with the full understanding and beleif that the term of
plaintiffs employment stated therein was six and not
twelve months as alloged.

That she is illiterate, unable to read, write, or

sign her name; that she is quite old and feeble, and that she made her X mark for signature to the contract for plaintiffs employment for a term of six months only; that she first agreed to employ them for three months, but through the persistancy of said plaintiffs, she was induced to consent to a term of six months for their employment, and that she signed said contract under the firm belief and conviction that the contract so recited, and that she never consented or agreed to their employment for a term of twelve months as alleged by plaintiffs.

She admits further the sale of said property by her on May 19, 1918, long after the term of six months given and presented by her to plaintiffs had expired.

That a few days before December 19, 1917, the expiration of the six months given plaintiffs to find a purchaser for her under her agreement, plaintiffs applied to her for extension of the term of the contract to include the ensuing six months, which she refused to do, for the reason that plaintiff had shown no active effort or diligence to find any prospective purchaser of the property and further that plaintiffs had apparently done nothing to find a purchaser; that they did not even visit the property or call upon her in reference to any sale until they applied to her just prior to December 19, 1917, to extend the term of said contract.

That she, after request of plaintiffs for extension employed J. L. Onorato, another real estate agent for six months agreeing to pay him a commission of five per cent on the amount of the price for the sale to a purchaser to be procured by him. That said Onorato soon after December, 1917, procured a purchaser, arranged for the sale to Mr. A. D. Danziger and that she paid the five per cent commission to Mr. Onorato for his services and

that after the 19 of December, 1917, the expiration of the six months term of their contract as consented to by her plaintiffs did not take any steps whatever to find a purchaser nor did they to her knowledge ever claim that they were employed by her during that period to find purchasers for the property in question.

That she had no idea or knowledge that plaintiffs claimed after December 19, 1917, the said contract to be enforced with her; that they never called on her after that date about said contract nor did they ever make any offer to secure a purchaser for her but on the contrary remained dormant and inactive in reference to the sale of her property from and after December 19, 1917, which was the expiration of their employment as agent by her and that she was in total ignorance that plaintiffs claimed any employment by her.

She denies further that she was to have paid twenty per cent attorney's fees and finally prays for judgment in her favor.

One of the plaintiffs, Mr. Poer, swore that the contract was in his own handwriting and made on the premises of the defendant and that their there were several witnesses present who as such witnesses signed in the presence of both plaintiffs and defendant. He further testifies that the entire document, as it now appears, was filled out at the same time, on the premises, with pen and ink furnished witnesses by the owner of the property and that the entire contract was read aloud and the only question that arose was the one of commissions to be paid witness' firm, the said firm demanding five per cent and finally agreeing to three per cent and that there was some discussion to the term of the contract but that he insisted on the twelve months time because

the property was land lying in the outskirts of the City and it was finally agreed upon and put in the contract as there stated and that he made the usual efforts to sell this property offering it in the usual and customary way.

C. L. Seixas testified substantially that he was a member of plaintiffs firm, that he was acquainted with the defendant, that he was present when the contract was made and signed, that he witnessed the signatures to the contract, that the contract was for twelve months and that he refused to have anything to do with the property except if he could get the signature for twelve months, he heard the contract read and it was read loudly and distinctly; daxxing he denies that there was anything said by the defendant fixing the time at three months and finally agreeing to sign at six months, that his firm would not undertake to attempt to sell this property as agents for the owner unless they got twelve months time to do so in.

Mrs. Fallo, witness for the defendant, testified substantially that she well knew plaintiffs' firm and she remembered that at about June 19, 1917 when witness was living on Tulane Avenue and Carrollton Avenue and defendant lived downtown, one of the plaintiffs Mr. Seixas opportuned witness to induce the defendant to grant a contract to plaintiffs' company for the sale of defendant's property and she introduced Mr. Seixas to her aunt, the defendant, and"he offered to give me a present of one hundred dollars to buy a dress if I could induce my aunt to sign a contract employing plaintiffs' firm to sell her property. My aunt positively declined giving plaintiffs' firm an agency to sell the property in question longer than three months and she induced her aunt to give plaintiffs six months time to get a sale for the property and that her aunt positively

and emphatically declined to extend the the time to twelve months, although frequently pressed to do so." She further testified that in December, 1917, Mr. Sexias came to see her "in trying to get my aunt to extend the contract an! he then subsequently made me an additional offer of a present of one hundred dollars if I could get my aunt to sign the contract for twelve months, which I refused to accept or to see my aunt at all on the subject."

Walter Smell testified substantially that "Mr. Seixas spoke to me over the phone and asked me to speak to Mrs. Fallo, which I did and I heard Mrs. Fallo tell Mr. Seixas that her aunt would not extend the contract one single day over the six months which had then expired."

Mr. Peter C. Maurer also testified substantially that "Mr. Seixas repeatedly requested of Mrs. Fallo to get the defendant, her aunt, to extend the term of the contract from six to twelve months which was refused most positively by Mrs. Fallo."

The next witness, A. F. Zimmerman testified that "he was present when the contract was entered into and signed and he heard all the negotiations between plaintiffs and the defendant and positively swears that the first term of the contract was for three months and subsequently the defendant consented to the six months term, but positively assured them that under no circumstances would she give plaintiffs any longer time to dispose of her property, than six months and he never heard twelve months mentioned at all; that he heard the contract read and listened to it and it was read for "6" months and he repeated
/denter thex the "6" months to the defendant, because she could not read or write and taking in his hand whilst on

351

the witness stand he demonstrated, 'you see right here is the "6". He never heard twelve and could not be mistaken; he wanted to get a copy of the contract and plaintiffs told him it was not necessary that they never furnish copies."

Miss Catherine Zagame swears positively that "she is the defendant in this case and that Mr. Seixas together with her niece, Mrs. Fallo, came to see her in reference to getting a contract to sell her piece of property and that she wanted to give them the contract but for only three months and finally through persuasion(at page 34 of her testimony) "I give it for 6 months'.

Q. Did you give it to them for twelve months?

A. No sir; no sir.

Q. What did you say about twelve months.

A. No sir; Mr. Zimmerman who was present told me that the contract read for six months and they read it loudly, for six months,

She further testified that she never agreed to extend the time; that the contract expired the 19th day of December, 1917 and she subsequently gave the contract to Mr. Onorato and after the expiration of the plaintiffs contract, they called upon her in December begging for further time and 'I told them that the I had gave my property for sale to Mr. Onorato.' I put my mark as I can make neither read nor write firmly under the belief that the contract was for only six months."

Mrs. A. F. Zimmerman was present when the contract was read and signed; "I heard it read aloud, the term was read as six months; the contract was read by Mr. Poer."

The testimony of defendant gives the entire circumstances of this transaction, clearly, forceably, and in our opinion truthfully, and it is as she alleges in her

answer, to the effect, that desiring to sell the property in question she employed plaintiffs as her agents to do so. ~~ThexpxaxextyxuxaxxxixuxkxdxuxaxxxVxxxkxxdyxix~~ ~~thxxStxtxxxfxMxxxkxxixxkx~~

All of the testimony in this case without referring to the testimony of each witness specifically proves beyond the shadow of a doubt that the defendant, ~~wxtxkx~~ wanting to sell her property was persuaded through the efforts of her niece and others possibly to place same in the hands of plaintiff for sale.

At first it was her earnest determination not to permit any agent to have her property in charge for more than three months but was finally convinced that that was not time enough and under the circumstances she extended the time from three to six months but from the witnesses' information the defendant positively refused to extend the time to twelve months and that when she signed the contract which was read in a loud voice it was read to her "for 6 months" and under the firm belief that this was the duration of the contract with the plaintiffs she made her mark for she could neither read nor write and this testimony of hers is confirmed ~~tixx~~ by every witness produced except plaintiffs themselves.

Under these circumstances there ~~ftX~~ can be no doubt that the termination of the contract had long since expired before she gave another contract to Mr. Onorato who finally sold the property for Nineteen Thousand Dollars to Mr. Danziger and for which she paid Mr. Onorato his commissions, five per cent of the sale.

The Judge of the Court ~~sexuxxxquxxxxxi~~ aquo heard and saw all the witnesses in this case and he has given us his written reasons for his judgment and which we now

353

.

adopt as our own in addition to what we have heretofore
written.

"The defendant an illiterate and aged person agreed
to give the plaintiffs an exclusive agency for six months
to sell a certain piece of property belonging to her.
There is no doubt in my mind that this was the specific
agreement between all the parties and that defendant special-
ly so understood. When this agency was established by prop-
er written authority there was no change of intention to lim-
it the agency to a period of six months, but the written au-
thority to sell contained a written stipulation, that the
period would be extended a further period of six months
unless the defendant by written notice to plaintiffs in-
formed plaintiffs to the contrary."

"This was not the contract contemplated, and looks
peculiar in view of the fact that defendant was illiterate,
unable to write and unable to read the document."

"During this latter period of six months, the de-
fendant herself with the said aid or agency of plaintiffs
sold the property in question, and this suit is to recover
the fee of plaintiffs as real estate agents based on the
unknown (to her) pretended stipulations."

"This is an error, and looks like a trick to entrap
by a written contract different from that which was consented
to."

"She is not liable beyond her consent. Suit dismissed."

For the reasons herein assigned, it is ordered, ad-
judged and decreed, that the judgment of the lower Court,
be and the same is hereby affirmed with costs of both Courts.

Judgment Affirmed.